# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| NATHANIEL SIMS, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Case No. 10 C 5266 |
| ROGER WALKER, JR., et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Nathaniel Sims, acting *pro se*, has sued Illinois Department of Corrections (IDOC) Director Roger E. Walker, Jr. and Deputy Director Jesse Montgomery, Jr.; Stateville Correctional Center Warden Terry McCann and the Assistant Warden, identified only as John Doe; and nine parole officers, IDOC corrections officers, and IDOC staff members for claims arising from the revocation of his mandatory supervised release. Sims alleges violations of his rights under the Fourth, Sixth, Eighth, and Fourteenth Amendments. Walker, later joined by other defendants, has moved to dismiss Sims's amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, the Court grants the motion.

## Facts

In assessing a motion to dismiss, the Court accepts the facts stated in the plaintiff's complaint as true and draws all reasonable inferences in plaintiff's favor. *E.g., Parish v. City of Elkhart*, 614 F.3d 677, 679 (7th Cir. 2010). Additionally, the court

construes liberally the allegations in a *pro se* litigant's complaint. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The following facts are taken from the plaintiff's second amended complaint, with some elaboration based on the parties' submissions in connection with the motion to dismiss.

During the relevant period, Sims was on mandatory supervised release (MSR) after his release from a prison term. MSR is the rough equivalent of parole.

Parole Officer Julion met with Sims for the first time in August 2008. Sims alleges that he was never notified that his previous parole officer, Vivian Thomas, had retired in December 2007 and that he had no in-person contact with a parole officer until his August meeting with Julion.

On August 20, 2008, Chicago police officers arrested Sims for violating a protective order issued on November 1, 2007. IDOC placed a "parole hold" on Sims following his arrest. On August 21, 2008, Sims appeared before a Cook County judge, who allegedly found probable cause to be lacking and ordered Sims to be released on an "I bond," i.e., on his own recognizance, in connection with the protective order charge.[1]

After Sims's appearance before the Cook County judge, an IDOC parole officer transferred Sims to Stateville Correctional Center based on the parole hold. Upon arrival, Sims alleges, correctional officer Fuslon received Sims's court return papers. The following morning, an intake officer, identified only as Jane Doe, completed Sims's

---

[1] There is some inconsistency here. Typically when there is a finding of no probable cause, the criminal charge is dismissed. Sims says, however, that the case remaining pending and he was released on bond. The Court will take all of these allegations as true for purposes of the motion to dismiss.

2

processing. Sims alleges that during this process, he informed Jane Doe that his court case was still pending.

A few days later, Sims received his parole violation report, which indicated that he was claimed to have violated conditions five and fifteen of his mandatory supervised release (MSR). Id. at 9. Sims alleges, however, that condition fifteen (anger management and drug counseling) had been removed from his MSR by parole officer Carol Farrior on September 23, 2007.

On September 2, 2008, Sims appeared before a preliminary hearing board, where parole officers Jolie and Harris presided over the proceedings. Jolie read the list of parole allegations, and Harris and Julion confirmed the accuracy of their reports. Jolie found probable cause that Sims violated his parole and added an allegation that he had violated condition one of his MSR terms.

Sims alleges that on the morning of September 4, 2008, the day he was supposed to appear in court, his name was not listed on the prison's court call list. Sims asked correctional officer Williams why his name was not on the list and showed Williams a copy of his I-bond slip and his court papers. Williams took Sims' papers and responded that she would show them to the records office. Sims alleges that he was not taken to court and never received a further response from Williams.

Sims was transferred to Western Illinois Correctional Center on September 5, 2008 to appear before the Prisoner Review Board ("PRB"). On September 24, 2008, Sims appeared before the PRB. The PRB continued his case, and his parole was reinstated on October 29, 2008 following a finding that he had violated condition fifteen (the condition Sims contends had been removed). Sims alleges that he was held until

3

November 7, 2008 when he was transferred back to Cook County custody for further court proceedings because he had missed a court date scheduled for October 27, 2008.

In his amended complaint, Sims alleges that his MSR was improperly revoked and that certain of the defendants violated his rights by failing to send him back to court on the date or dates his court case was scheduled. He alleges that the defendants violated his rights under the Fourth, Sixth, and Eighth Amendments as well as his right to due process under the Fourteenth Amendment. The Court previously dismissed certain claims and defendants on the basis of immunity. *See* Order of Jan. 20, 2011. The Court deals with the remaining claims in this decision.

## Discussion

**1. Wrongful incarceration**

As indicated above, Sims alleges that his MSR was improperly revoked, resulting in wrongful incarceration. Specifically, he alleges that his alleged violation of the protective order did not constitute a violation of his MSR conditions and that condition fifteen – one of the conditions he was found to have violated – had been removed as a condition of his MSR.

Defendants argue that Sims' claim for damages for the allegedly wrongful revocation of his MSR is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Court held that to recover damages under 42 U.S.C. § 1983 for a constitutional violation due to conduct "whose unlawfulness would render a conviction or sentence invalid," a plaintiff must prove that the conviction has been reversed, expunged, or

4

declared invalid. *Id.* at 477, 486-87. The Seventh Circuit has applied *Heck* to parole revocations. *See Knowlin v. Thompson*, 207 F.3d 907, 909 (7th Cir. 2000).

A finding that Sims' MSR was improperly revoked would necessarily imply the invalidity of his "conviction" – that is, his MSR revocation. Sims has not alleged that his MSR revocation has been reversed or declared invalid. Thus under Heck, he cannot maintain any claim challenging the propriety of the revocation. Any such claim must be dismissed without prejudice. *Copus v. City of Edgerton*, 96 F.3d 1038, 1039 (7th Cir. 1996) (per curiam).

**2.     Plaintiff's remaining claims**

**a.     Fourth Amendment claims**

Sims' Fourth Amendment claim – in effect, a claim for wrongful arrest or seizure on the MSR violation – is not barred by *Heck* because such a claim does not necessarily imply that his later MSR revocation was invalid. *See Snodderly v. R.U.F.F. Drug Enforcement Task Force*, 239 F.3d 892, 897 (7th Cir. 2001).

Sims alleges that IDOC and his parole officers ignored the state court judge's finding that there was no probable cause to hold him for the alleged violation of the protective order. Additionally, Sims alleges that IDOC issued a false warrant for a parole hold that caused him to be transferred to IDOC custody following his release by the state court judge on August 21, 2008. Defendants argue that the seizure of a parolee requires less than probable cause. Def.'s Mem. at 5 (citing *Knox v. Smith*, 342 F.3d 651, 657 (7th Cir. 2003)).

Sims' first allegation – that IDOC ignored the judge's finding of no probable

5

cause – does not give rise to a viable claim. The judge's finding concerned the alleged violation of the protective order. By contrast, IDOC placed a parole hold on Sims for alleged violations of his MSR that went beyond the protective order issue.

In addition, parolees only have a "conditional liberty properly dependent on observance of special parole restrictions." *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972). Only reasonable suspicion is required to initiate parole revocation proceedings. *See Knox*, 342 F.3d at 659. For reason (and perhaps other reasons), the state court judge's finding of no probable cause did not preclude the parole authorities from proceeding ahead. In any event, Sims admits that the preliminary hearing board itself found probable cause to hold him for several alleged violations (not just the protective order issue) on September 2, 2008.

Sims also alleges that IDOC issued a false warrant that led to the parole hold. In his complaint, Sims does not allege any facts that suggest that this claim is distinct from his allegation that IDOC ignored the state court judge's finding of no probable cause. For the reasons just described, this allegation does not give rise to a viable Fourth Amendment claim.

      b.     **Sixth Amendment claim**

Sims alleges that the defendants violated his Sixth Amendment rights. As defendants argue, the Sixth Amendment does not apply to parole revocation hearings, because they are not considered to be criminal prosecutions for purposes of the Sixth Amendment. *United States v. Kelley*, 446 F.3d 688, 691-92 (7th Cir. 2006). Sims has failed to state a Sixth Amendment claim.

### c. Eighth Amendment claim

Sims alleges that condition fifteen – one of the conditions he was found to have violated – had been removed from his MSR on September 23, 2007. Sims alleges that the parole officers who found him to have violated this condition acted with deliberate indifference by in effect changing the conditions of his MSR and that this violated his Eighth Amendment right to be free from cruel and unusual punishment.

It is unclear to what extent this claim survives the Court's January 20, 2011 order dismissing claims against the parole board officals on the basis of immunity. Even if the claim survives, however, it is barred by *Heck v. Humphrey*. Sims is effectively saying that he was wrongfully found to have violated the terms of his MSR. This claim directly attacks the validity of the MSR revocation. For that reason, and because the revocation has not been overturned in state court or otherwise, *Heck* precludes Sims from seeking damages under section 1983.

### 4. Due process claim

Most of Sims' allegations involving due process violations appear to involve the claims the Court has dismissed under *Heck*. For any due process claims that may remain, defendants contend that Sims received sufficient process.

The Seventh Circuit recently addressed what due process requires following an arrest for a parole violation. A preliminary hearing to determine probable cause must be held "as promptly as convenient after arrest," and a plenary hearing must be held within a "reasonable time after the parolee is taken into custody." *Atkins v. City of Chicago*, 631 F.3d 823, 827 (7th Cir. 2011) (citing *Morrissey*, 408 U.S. at 485, 488). In

7

*Atkins*, the court upheld a dismissal for failure to state a claim when a preliminary hearing was held seven days after the parolee's arrest. *See id.* at 828. In addition, the Supreme Court has concluded that a plenary hearing within two months after a parolee is taken into custody qualifies as having been held within a reasonable time. *Morrissey*, 408 U.S. at 488.

Sims was transferred to IDOC custody on August 21, 2008. Parole officials conducted a preliminary hearing twelve days later, on September 2, 2008. Sims had a hearing before the PRB on September 24, 2008, and his case was continued until October 29, 2008, when his parole was reinstated. A lapse of twelve days before holding a preliminary hearing does not appear to the Court to run afoul of the requirement that a hearing be held "as promptly as convenient" following the parolee's arrest. In addition, it appears that the PRB hearing conducted on September 24, 2008 was a plenary hearing. This was well within the two-month period discussed in *Morrissey*. And even if the plenary hearing did not take place until October 29, 2008, that was only one week more than two months after Sims' transfer to IDOC custody. The Court concludes that Sims has failed to state a viable procedural due process claim.

     **5.**     **Denial of access to courts claim**

Sims alleges that he was supposed to appear in state court on September 4, 2008 but that he was not taken to court because his name did not appear on the court call list. He alleges that correctional officer Williams never followed up regarding the missed court date. Sims also alleges that he was returned to Cook County custody

8

following his parole reinstatement because he missed a court date scheduled for October 27, 2008, which he likewise appears to attribute to IDOC authorities. Although Sims does not make it entirely clear what sort of claim he is making regarding his missed court dates, it would appear that this is a claim of denial of access to the courts.

To establish a claim for denial of access to the courts, a plaintiff must: (1) identify some underlying claim that he lost due to denial of access, (2) describe the official acts frustrating the litigation, and (3) identify a remedy that may be awarded that would not be available to the plaintiff in another suit. *Stiedl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007) (citing *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002)). Sims does not identify any underlying claim that he lost due to his missed court dates. In any event, the Court is unaware of any authority that would suggest that jail or prison authorities' failure to bring a prisoner to court for a scheduled date gives rise to a separate legal claim. The Court concludes that these allegations fail to state a claim.

### 6. Remaining claims

Throughout his amended complaint, Sims lists additional allegations: official misconduct, obstruction of justice, perjury, contempt of court, attempt to cover up violations, and conspiracy. *See, e.g.*, 2d Am. Compl. at 17-18, 24. Defendants do not address these claims specifically but argue that what they characterize as "pendent" claims should be dismissed because all of Sims' federal claims are deficient. *See* Def.'s Mem. at 9.

The Court concludes that Sims' remaining allegations fail to state any viable legal claims. A court need not accept as true mere legal conclusions or conclusory

9

statements, which is all that Sims has provided regarding these additional claims. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). Sims alleges specifically that parole officer Julion committed official misconduct, obstruction of justice, and perjury because she failed to meet with him more than once during the period from December 2007 to August 2008. 2d Am. Compl. at 20. The Court is hard pressed to see how this gives rise to any viable federal claim cognizable under section 1983. Beyond this, Sims alleges no facts regarding these additional apparent claims. In particular, he has failed to allege anything that suggests that he has a right to relief beyond the speculative level. His remaining claims are dismissed.

## Conclusion

The Court grants defendant Montgomery's motion to join in the motion to dismiss [# 42] and denies plaintiff's motion for appointment of counsel [# 30]. The Court denies as unnecessary plaintiff's motion to "renew" his amended complaint [# 25]. For the reasons stated above, the Court grants defendants' motion to dismiss [# 22]. The Clerk is directed to enter judgment dismissing without prejudice plaintiff's claims challenging the revocation of his supervised release and dismissing with prejudice his remaining claims.

MATTHEW F. KENNELLY
United States District Judge

Date: July 12, 2011